UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) No. 09 CR 383 |
| | ) |
| v. | ) Violations: Title 21, United States |
| | ) Code, Sections 841, 846, 952(a), |
| JOAQUIN GUZMAN-LOERA, | ) 960, 963, and Title 18, United |
|     a/k/a "El Chapo," | ) States Code, Section 2. |
|     a/k/a "Chapo Guzman," | ) |
| ISMAEL ZAMBADA-GARCIA, | ) |
|     a/k/a "El Mayo," | ) Judge Ruben Castillo |
|     a/k/a "Mayo Zambada," | ) |
| JESUS VICENTE ZAMBADA-NIEBLA, | ) |
|     a/k/a "Vicente Zambada-Niebla," | ) MAGISTRATE JUDGE ASHMAN |
|     a/k/a "Vicente Zambada," | ) |
|     a/k/a "Mayito," | ) SUPERSEDING INDICTMENT |
|     a/k/a "30 " | ) |
| ALFREDO GUZMAN-SALAZAR, | ) |
|     a/k/a "Alfredillo," | ) |
| ALFREDO VASQUEZ-HERNANDEZ, | ) |
|     a/k/a "Alfredo Compadre," | ) |
| FIRST NAME UNKNOWN, LAST NAME | ) |
| UNKNOWN, | ) UNDER SEAL |
|     a/k/a "Juancho," | ) |
| GERMAN OLIVARES, | ) |
| FELIPE LAST NAME UNKNOWN, | ) |
| TOMAS AREVALO-RENTERIA, | ) |
| PEDRO FLORES, and | ) |
| MARGARITO FLORES | ) |

FILED

AUG - 6 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

<u>COUNT ONE</u>

The SPECIAL FEBRUARY 2008-2 GRAND JURY charges:

1.      Beginning no later than in or about May 2005, and continuing until at least on

or about December 1, 2008, at Chicago, in the Northern District of Illinois, Eastern Division,

and elsewhere,

JOAQUIN GUZMAN-LOERA, a/k/a "El Chapo," a/k/a "Chapo Guzman,"
ISMAEL ZAMBADA-GARCIA, a/k/a "El Mayo," a/k/a "Mayo Zambada,"
JESUS VICENTE ZAMBADA-NIEBLA a/k/a "Vicente Zambada-Niebla," a/k/a
"Vicente Zambada," a/k/a "Mayito," a/k/a "30,"
ALFREDO GUZMAN-SALAZAR, a/k/a "Alfredillo,"
ALFREDO VASQUEZ-HERNANDEZ,  a/k/a "Alfredo Compadre,"
FIRST NAME UNKNOWN, LAST NAME UNKNOWN, a/k/a "Juancho,"
GERMAN OLIVARES,
FELIPE LAST NAME UNKNOWN,
TOMAS AREVALO-RENTERIA,
PEDRO FLORES, and
MARGARITO FLORES,

defendants herein, did conspire with each other, and with others known and unknown to the

Grand Jury, knowingly and intentionally to possess with intent to distribute and to distribute

controlled substances, namely 5 kilograms or more of mixtures and substances containing

a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, and 1

kilogram or more of mixtures and substances containing a detectable amount of heroin, a

Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code,

Section 841(a)(1).

### Overview of the Conspiracy

2.     It was part of the conspiracy that defendants JOAQUIN GUZMAN-LOERA

and ISMAEL ZAMBADA-GARCIA each directed factions of a cocaine and heroin drug

trafficking organization in Mexico commonly known to its members and its associates as the

"Sinaloa Cartel."  The faction of the Sinaloa Cartel directed by JOAQUIN GUZMAN-

LOERA (the "GUZMAN-LOERA FACTION") and the faction of the Sinaloa Cartel directed

by ISMAEL ZAMBADA-GARCIA (the "ZAMBADA-GARCIA FACTION") coordinated

their narcotics trafficking activities with each other, with other factions of the Sinaloa Cartel, and with other affiliated cartels, in an alliance commonly known to their members and associates as "the Federation."

3.     At times during the conspiracy, the "Federation" included a narcotics trafficking alliance among the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION of the Sinaloa Cartel and, among others, Arturo Beltran-Leyva, who also directed a cocaine and heroin drug trafficking organization in Mexico commonly known to its members and its associates, as well as to the public, as the "Beltran-Leyva Cartel." In approximately early 2008, a split occurred between the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION of the Sinaloa Cartel, on the one hand, and the Beltran-Leyva Cartel, on the other. This split resulted in the Beltran-Leyva Cartel ending its alliance with the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION of the Sinaloa Cartel and the rest of the Federation. Since this split, the GUZMAN-LOERA FACTION, the ZAMBADA-GARCIA FACTION, and their allies, on the one hand, and the Beltran-Leyva Cartel and its allies, on the other, became engaged in a violent war in Mexico over various issues, including control of lucrative narcotics trafficking routes into the United States, and the loyalty of wholesale narcotics customers, including but not limited to defendants PEDRO FLORES and MARGARITO FLORES (the "FLORES BROTHERS").

4.     It was further part of the conspiracy that JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION controlled by them, coordinated their narcotics

-3-

trafficking activities to import multi-ton quantities of cocaine from Central and South American countries, including Colombia and Panama, to the interior of Mexico. JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION controlled by them, coordinated the unloading of multi-ton shipments of cocaine in Mexico, and coordinated the transportation and storage of these shipments within Mexico. JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION controlled by them, coordinated their narcotics trafficking activities to smuggle multi-ton quantities of cocaine, generally in shipments of hundreds of kilograms at a time, as well as multi-kilogram quantities of heroin, from Mexico across the United States border, and then into and throughout the United States, including Chicago, Illinois, and elsewhere.

5.     It was further part of the conspiracy that the FLORES BROTHERS and their associates (collectively, the "FLORES CREW") operated a wholesale cocaine and heroin distribution organization that distributed thousands of kilograms of cocaine and multi-kilogram quantities of heroin in the Chicago, Illinois, area and elsewhere. The FLORES BROTHERS obtained substantial quantities of cocaine and heroin from the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION of the Sinaloa Cartel.

*Members of the Conspiracy*

6.     It was further part of the conspiracy that defendant JOAQUIN GUZMAN-LOERA, a/k/a "El Chapo," a/k/a "Chapo Guzman," was a leader of the Sinaloa Cartel.

GUZMAN-LOERA was the head of the GUZMAN-LOERA FACTION, and was ultimately responsible for its operation. GUZMAN-LOERA obtained and negotiated the price for multi-ton quantities of cocaine from Central and South American countries, including Colombia and Panama, and directed and arranged for the transportation of multi-kilogram quantities of cocaine and heroin from the interior of Mexico to the United States border, and then into and throughout the United States.

7.      It was further part of the conspiracy that defendant ISMAEL ZAMBADA-GARCIA, a/k/a "El Mayo," a/k/a "Mayo Zambada," was a leader of the Sinaloa Cartel. ZAMBADA-GARCIA was the head of the ZAMBADA-GARCIA FACTION, and was ultimately responsible for its operation. ZAMBADA-GARCIA obtained and negotiated the price for multi-ton quantities of cocaine from Central and South American countries, including Colombia and Panama, to the interior of Mexico, and directed and arranged for the transportation of multi-kilogram quantities of cocaine and heroin from the interior of Mexico to the United States border, and then into and throughout the United States.

8.      It was further part of the conspiracy that defendant JESUS VICENTE ZAMBADA-NIEBLA, a/k/a "Vicente Zambada-Niebla," a/k/a "Vicente Zambada," a/k/a "Mayito," a/k/a "30," who is ISMAEL ZAMBADA-GARCIA's son, was a high-level member of the Sinaloa Cartel and the ZAMBADA-GARCIA FACTION, and was responsible for many aspects of the cartel's operations. JESUS VICENTE ZAMBADA-NIEBLA acted, among other things, as a logistical coordinator who coordinated deliveries of multi-kilogram quantities of cocaine and heroin into the United States on behalf of

defendant ISMAEL ZAMBADA-GARCIA and the ZAMBADA-GARCIA FACTION, and deliveries of bulk quantities of United States currency to defendant ISMAEL ZAMBADA-GARCIA and the ZAMBADA-GARCIA FACTION from its customers in the United States.

9.     It was further part of the conspiracy that defendant ALFREDO GUZMAN-SALAZAR, a/k/a "Alfredillo," the son of JOAQUIN GUZMAN-LOERA, acted as a logistical coordinator who coordinated deliveries of multi-kilogram quantities of cocaine and heroin into the United States on behalf of defendant JOAQUIN GUZMAN-LOERA and the GUZMAN-LOERA FACTION, as well as deliveries of bulk quantities of United States currency to JOAQUIN GUZMAN-LOERA and the GUZMAN-LOERA FACTION from its customers in the United States.

10.     It was further part of the conspiracy that defendant ALFREDO VASQUEZ-HERNANDEZ, a/k/a "Alfredo Compadre," acted as a logistical coordinator who coordinated the importation to Mexico from Central and South American countries of multi-ton quantities of cocaine, and deliveries of multi-kilogram quantities of cocaine into the United States on behalf of defendant JOAQUIN GUZMAN-LOERA and the GUZMAN-LOERA FACTION, as well as deliveries of bulk quantities of United States currency to JOAQUIN GUZMAN-LOERA and the GUZMAN-LOERA FACTION from its customers in the United States.

11.     It was further part of the conspiracy that defendant FIRST NAME UNKNOWN, LAST NAME UNKNOWN, a/k/a "Juancho," was a high-level member of the Sinaloa Cartel and controlled the "Culiacan Plaza," meaning controlling the flow of narcotics through the geographic area of Culiacan, Mexico, for the GUZMAN-LOERA FACTION.

FIRST NAME UNKNOWN, LAST NAME UNKNOWN, a/k/a "Juancho," acted as a

narcotics broker and logistical coordinator who coordinated deliveries of multi-kilogram

quantities of cocaine and heroin into the United States on behalf of defendant JOAQUIN

GUZMAN-LOERA and the GUZMAN-LOERA FACTION, as well as deliveries of bulk

quantities of United States currency to JOAQUIN GUZMAN-LOERA and the GUZMAN-

LOERA FACTION from its customers in the United States.

   12. It was further part of the conspiracy that defendant GERMAN OLIVARES was

a high-level member of the Sinaloa Cartel and controlled the "Juarez Plaza," meaning

controlling the flow of narcotics through the geographic area of Ciudad Juarez, Mexico, for

the ZAMBADA-GARCIA FACTION. GERMAN OLIVARES acted as a logistical

coordinator who coordinated deliveries of multi-kilogram quantities of cocaine and heroin

into the United States on behalf of defendant ISMAEL ZAMBADA-GARCIA and the

ZAMBADA-GARCIA FACTION, as well as deliveries of bulk quantities of United States

Currency to defendant ISMAEL ZAMBADA-GARCIA and the ZAMBADA-GARCIA

FACTION from its customers in the United States.

   13. It was further part of the conspiracy that defendant FELIPE LAST NAME

UNKNOWN was a heroin supplier who worked with and for defendant ISMAEL

ZAMBADA-GARCIA and the ZAMBADA-GARCIA FACTION, who coordinated

deliveries of multi-kilogram quantities of heroin into the United States, as well as deliveries

of bulk quantities of United States currency to defendant ISMAEL ZAMBADA-GARCIA

and the ZAMBADA-GARCIA FACTION from its customers in the United States.

14.     It was further part of the conspiracy that defendant TOMAS AREVALO-RENTERIA worked with both the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION, and acted as a narcotics broker and customer for both factions and coordinated deliveries of multi-kilogram quantities of cocaine and heroin into the United States, as well as deliveries of bulk quantities of United States currency to both factions in Mexico from their customers in the United States.

15.     It was further part of the conspiracy that defendants PEDRO FLORES and MARGARITO FLORES were narcotics customers of both the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION, as well as the Beltran-Leyva Cartel, who purchased and distributed multi-ton quantities of cocaine, usually in shipments of hundreds of kilograms at a time and received from both factions simultaneously, as well as multi-kilogram quantities of heroin, in Chicago, Illinois, and elsewhere.

*Means and Methods of the Conspiracy*

16.     It was further part of the conspiracy that JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION controlled by them, coordinated their narcotics trafficking activities to import multi-ton quantities of cocaine from Central and South American countries, including Colombia and Panama, to the interior of Mexico, using various means, including but not limited to, Boeing 747 cargo aircraft, private aircraft, submarines and other submersible and semi-submersible vessels, container ships, go-fast boats, fishing vessels, buses, rail cars, tractor trailers, and automobiles.

17.    It was further part of the conspiracy that JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION controlled by them, coordinated the unloading of multi-ton shipments of cocaine in Mexico, and coordinated the transportation and storage of these shipments within Mexico.

18.    It was further part of the conspiracy that JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION controlled by them, coordinated their narcotics trafficking activities to smuggle multi-ton quantities of cocaine, usually in shipments of hundreds of kilograms at a time, and multi-kilogram quantities of heroin, from the interior of Mexico to the United States border, and then into and throughout the United States, including for distribution to the FLORES CREW and others in the greater Chicago, Illinois area and elsewhere.

19.    It was further part of the conspiracy that JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, "fronted" multi-kilogram quantities of cocaine and heroin to the FLORES CREW and others, which means that JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, provided cocaine and heroin to the FLORES CREW and others on consignment, without payment at the time of delivery. Payment was subsequently

made by the FLORES CREW and others on their behalf after some or all of the cocaine and heroin was sold to customers of the FLORES CREW.

20.     It was further part of the conspiracy that members of the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION routinely coordinated and transported multi-kilogram loads of cocaine to the FLORES CREW in the same shipment, with packaged kilograms of cocaine marked differently to indicate whether the kilograms originated with the GUZMAN-LOERA FACTION or the ZAMBADA-GARCIA FACTION.   At certain times during the conspiracy, the FLORES CREW obtained and distributed from Chicago, Illinois, and elsewhere, on average, 1500 to 2000 kilograms of cocaine per month, and received some of that quantity (and at certain times all) from JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and some of that quantity (and at certain times all) from members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION of the Sinaloa Cartel.

21.     It was further part of the conspiracy that for some shipments of narcotics from the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, the FLORES CREW received the cocaine and heroin in the greater Chicago, Illinois area.   For other shipments, the FLORES CREW received the cocaine and heroin in the greater Los Angeles, California area, where truck drivers for the FLORES CREW transported the cocaine and heroin to the greater Chicago, Illinois area for further distribution.

22.     It was further part of the conspiracy that the FLORES CREW used several warehouse locations to unload and store shipments of cocaine and heroin received from the

-10-

GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION in the greater Chicago, Illinois area.

23.     It was further part of the conspiracy that several members of the FLORES CREW were responsible for: (a) unloading narcotics shipments; (b) delivering the narcotics to one of several storage locations used by the FLORES CREW; (c) separating narcotics deliveries into smaller amounts to be distributed to customers of the FLORES CREW; and (d) delivering narcotics to customers of the FLORES CREW.

24.     It was further part of the conspiracy that defendants JOAQUIN GUZMAN-LOERA, ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, caused the delivery of large quantities of cocaine and heroin to members of the FLORES CREW for further distribution to customers in the greater Chicago area and elsewhere. The FLORES CREW sold the cocaine and heroin for cash to wholesale customers in the greater Chicago, Illinois area, as well as to customers in the areas of Detroit, Michigan; Cincinnati, Ohio; Philadelphia, Pennsylvania; Washington, D.C.; New York, New York; Vancouver, British Columbia; Columbus, Ohio; and elsewhere. Wholesale customers in these areas further distributed the cocaine and heroin to other areas, including Milwaukee, Wisconsin.

25.     It was further part of the conspiracy that members of the FLORES CREW were responsible for: (1) collecting and picking up payment from customers of the FLORES CREW; (2) delivering this money to various storage locations used by the FLORES CREW;

(3) counting and packaging the money; and (4) reporting cash receipts to the FLORES BROTHERS.

26.     It was further part of the conspiracy that members of the FLORES CREW and other co-conspirators counted cash narcotics proceeds and packaged them so that they could be delivered to couriers who would transport them back to Mexico.  Members of the FLORES CREW then delivered, and caused to be delivered, millions of dollars in cash narcotics proceeds to other co-conspirators, including members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, who smuggled the proceeds back to Mexico in bulk.  JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, transported and caused the transportation of large quantities of cash narcotics proceeds from locations in the United States to locations in Mexico.

27.     It was further part of the conspiracy that the FLORES CREW routinely delivered large quantities of United States currency from the sale of cocaine and heroin to the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION of the Sinaloa Cartel in one bulk shipment, without differentiating which portions of the cash narcotics proceeds were in payment for a particular faction's cocaine and heroin.  JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, regularly received multi-million dollar payments from the FLORES CREW after deliveries of cocaine and heroin were made to the FLORES CREW.

-12-

28.     It was further part of the conspiracy that the FLORES CREW maintained ledgers, in paper and electronic form, which tracked information relating to the FLORES CREW's drug-trafficking activities, including, but not limited to: (1) amounts of narcotics received; (2) money sent to Mexican sources of supply, including the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION; (3) amounts of narcotics delivered to customers of the FLORES CREW; (4) the courier or couriers responsible for particular deliveries to customers; (5) money received from customers; and (6) payments to members of the FLORES CREW.

29.     It was further part of the conspiracy that members of the GUZMAN-LOERA FACTION, ZAMBADA-GARCIA FACTION and FLORES CREW utilized various means to communicate with each other, including but not limited to cellular telephones, satellite telephones, computers, and hand-held PDAs, to facilitate their drug trafficking activities.

30.     It was further part of the conspiracy that defendants used coded language and other means to misrepresent, conceal and hide, and to cause to be misrepresented, concealed and hidden, the drug trafficking activities of the conspiracy, and to avoid detection and apprehension by law enforcement authorities.

*Possession of Narcotics in the Northern District of Illinois*

31.     It was further part of the conspiracy that members of the GUZMAN-LOERA FACTION, ZAMBADA-GARCIA FACTION, and FLORES CREW possessed with intent to distribute large quantities of narcotics in the Northern District of Illinois, including but not limited to the possession of narcotics seized by law enforcement officials as described below:

-13-

(a)   On or about June 5, 2005, approximately 398 kilograms of cocaine in Bloomington, Illinois.

(b)   On or about February 12, 2007, approximately 300 kilograms of cocaine in Naperville, Illinois.

(c)   On or about July 9, 2007, approximately 400 kilograms of cocaine in Lockport, Illinois.

(d)   On or about May 26, 2008, approximately 8 kilograms of cocaine in Chicago, Illinois and South Holland, Illinois.

(e)   On or about August 9, 2008, approximately 250 kilograms of cocaine in Melrose Park, Illinois.

(f)   On or about October 7, 2008, approximately 15 kilograms of heroin in Chicago, Illinois.

(g)   On or about November 13, 2008, approximately 20 kilograms of heroin in Northlake, Illinois.

(h)   On or about November 13, 2008, approximately 8 kilograms of heroin in Chicago, Illinois.

(i)   On or about November 14, 2008, approximately 12 kilograms of heroin in Chicago, Illinois.

(j)   On or about November 14, 2008, approximately 77 kilograms of cocaine in Ontario, California, bound for Chicago, Illinois.

(k)   On or about November 15, 2008, approximately 86 kilograms of cocaine in Ontario, California, bound for Chicago, Illinois.

(l)   On or about November 18, 2008, approximately 89 kilograms of cocaine in Ontario, California, bound for Chicago, Illinois

(m)   On or about November 30, 2008, approximately 322 kilograms of cocaine in Ontario, California, bound for Chicago, Illinois.

*Possession of United States Currency in the Northern District of Illinois*

32.     It was further part of the conspiracy that members of the GUZMAN-LOERA

FACTION, ZAMBADA-GARCIA FACTION, and FLORES CREW collected and packaged

in the Northern District of Illinois large quantities of United States currency from the sale of

cocaine and heroin, including but not limited to the currency seized by law enforcement. as

described below:

   (a)     On or about April 14, 2008, approximately $4,000,000 in United States
           currency in Palos Hills, Illinois.

   (b)     On or about October 29, 2008, approximately $4,700,000 in United States
           currency in Hinsdale, Illinois.

   (c)     On or about November 4, 2008, approximately $4,000,000 in United States
           currency in Hinsdale, Illinois.

   (d)     On or about November 17, 2008, approximately $1,000,000 in United States
           currency in Romeoville, Illinois.

   (e)     On or about November 22, 2008, approximately $715,000 in United States
           currency in Chicago, Illinois.

   (f)     On or about November 25, 2008, approximately $4,770,000 in United States
           currency in Romeoville, Illinois.

*Acts of Violence In Furtherance of the Conspiracy*

33.     It was further part of the conspiracy that JOAQUIN GUZMAN-LOERA and

ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and

ZAMBADA-GARCIA FACTION, utilized various means to evade law enforcement and

protect their narcotics distribution activities, including but not limited to: obtaining guns and

other weapons; bribing corrupt public officials; engaging in violence and threats of violence;

and intimidating with threats of violence members of law enforcement, rival narcotics traffickers, and members of their own drug trafficking organizations.

34.    It was further part of the conspiracy that JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and the ZAMBADA-GARCIA FACTION, utilized various means to protect and further their narcotics distribution activities from rival narcotics trafficking organizations, including but not limited to the Beltan-Leyva Cartel.  These means included, but were not limited to, threatening acts of violence to their wholesale narcotics distributors, including the FLORES BROTHERS, if they engaged in narcotics trafficking with rival cartels, including the Beltran-Leyva Cartel.

35.    It was further part of the conspiracy that JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, utilized various means to ensure they received payment for their narcotics distribution activities, including violence and threats of violence.

36.    It was further part of the conspiracy that JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, including JESUS VICENTE ZAMBADA-NIEBLA, sought to obtain weapons from the United States and discussed the use of violence against American and/or Mexican government buildings.  JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, including JESUS VICENTE ZAMBADA-NIEBLA,

discussed the use of violence against these targets in response to the arrest by Mexican authorities of ISMAEL ZAMBADA-GARCIA's brother, and his anticipated extradition to the United States, and in retaliation for the respective governments' enforcement of their narcotics laws and in order to perpetuate their narcotics trafficking activities. JOAQUIN GUZMAN-LOERA and ISMAEL ZAMBADA-GARCIA, and members of the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION, including JESUS VICENTE ZAMBADA-NIEBLA, discussed this use of violence in "the Smoke," a coded term for Mexico City, Mexico, an area of Mexico in which narcotics trafficking was controlled by the Beltran-Leyva Cartel, so that public and governmental blame for such an act of violence would fall on Arturo Beltran-Leyva and the Beltran-Leyva Cartel, and not on the GUZMAN-LOERA FACTION and ZAMBADA-GARCIA FACTION of the Sinaloa Cartel;

All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## COUNT TWO

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

Beginning in or about May 2005, and continuing until at least on or about December

1, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOAQUIN GUZMAN-LOERA, a/k/a "El Chapo," a/k/a "Chapo Guzman,"
ISMAEL ZAMBADA-GARCIA, a/k/a "El Mayo," a/k/a "Mayo Zambada,"
JESUS VICENTE ZAMBADA-NIEBLA a/k/a "Vicente Zambada-Niebla," a/k/a
"Vicente Zambada," a/k/a "Mayito," a/k/a "30,"
ALFREDO GUZMAN-SALAZAR, a/k/a "Alfredillo,"
ALFREDO VASQUEZ-HERNANDEZ, a/k/a "Alfredo Compadre,"
FIRST NAME UNKNOWN, LAST NAME UNKNOWN, a/k/a "Juancho,"
GERMAN OLIVARES,
FELIPE LAST NAME UNKNOWN,
TOMAS AREVALO-RENTERIA,
PEDRO FLORES, and
MARGARITO FLORES,

defendants herein, did conspire with other persons known and unknown to the Grand Jury,

knowingly and intentionally to import into the customs territory of the United States from a

place outside the United States, namely, Mexico, a controlled substance, namely, more than

5 kilograms of mixtures and substances containing a detectable amount of cocaine, a

Schedule II Narcotic Drug Controlled Substance, and more than 1 kilogram of mixtures and

substances containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled

Substance, in violation of Title 21, United States Code, Sections 952(a) and 960;

In violation of Title 21, United States Code, Section 963, and Title 18, United States

Code, Section 2.

-18-

## COUNT THREE

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

On or about October 7, 2008, at Chicago, in the Northern District of Illinois, Eastern Division,

### TOMAS AREVALO-RENTERIA,

defendant herein, did knowingly and intentionally distribute a controlled substance, namely, 1 kilogram or more of mixtures and substances containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

<u>COUNT FOUR</u>

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

On or about November 13, 2008, at Northlake, in the Northern District of Illinois,

Eastern Division,

> JOAQUIN GUZMAN-LOERA, a/k/a "El Chapo," a/k/a "Chapo Guzman,"
> ALFREDO GUZMAN-SALAZAR, a/k/a "Alfredillo," and
> FIRST NAME UNKNOWN, LAST NAME UNKNOWN, a/k/a "Juancho,"

defendants herein, did knowingly and intentionally distribute a controlled substance, namely,

1 kilogram or more of mixtures and substances containing a detectable amount of heroin, a

Schedule I Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United

States Code, Section 2.

<u>COUNT FIVE</u>

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

On or about November 13, 2008, at Chicago, in the Northern District of Illinois, Eastern Division,

ISMAEL ZAMBADA-GARCIA, a/k/a "El Mayo," a/k/a "Mayo Zambada," and
FELIPE LAST NAME UNKNOWN,

defendants herein, did knowingly and intentionally distribute a controlled substance, namely, 1 kilogram or more of mixtures and substances containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

COUNT SIX

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

On or about November 14, 2008, at Chicago, in the Northern District of Illinois, Eastern Division,

TOMAS AREVALO-RENTERIA,

defendant herein, did knowingly and intentionally distribute a controlled substance, namely, 1 kilogram or more of mixtures and substances containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

-22-

## FORFEITURE ALLEGATION

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

1.      The allegations of Counts One, Two and Three of this Indictment are realleged and incorporated by reference as if fully restated herein for the purpose of alleging that certain property is subject to forfeiture to the United States pursuant to the provisions of Title 21, United States Code, Section 853.

2.      As a result of their violations of Title 21, United States Code, Sections 841(a)(1), 846, and 963, as alleged in the foregoing Indictment,

> JOAQUIN GUZMAN-LOERA, a/k/a "El Chapo," a/k/a "Chapo Guzman,"
> ISMAEL ZAMBADA-GARCIA, a/k/a "El Mayo," a/k/a "Mayo Zambada,"
> JESUS VICENTE ZAMBADA-NIEBLA a/k/a "Vicente Zambada-Niebla," a/k/a
> "Vicente Zambada," a/k/a "Mayito," a/k/a "30,"
> ALFREDO GUZMAN-SALAZAR, a/k/a "Alfredillo,"
> ALFREDO VASQUEZ-HERNANDEZ, a/k/a "Alfredo Compadre,"
> FIRST NAME UNKNOWN, LAST NAME UNKNOWN, a/k/a "Juancho,"
> GERMAN OLIVARES,
> FELIPE LAST NAME UNKNOWN,
> TOMAS AREVALO-RENTERIA,
> PEDRO FLORES, and
> MARGARITO FLORES,

defendants herein, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a)(1) and (2): (1) any and all property constituting or derived from, any proceeds they obtained, directly or indirectly, as a result of the violations; and (2) any and all of property used, or intended to be used, in any manner or part, to commit or facilitate the commission of the violations.

3.      The interests of the defendants,  jointly and severally, subject to forfeiture to

the United States pursuant to Title 21, United States Code, Section 853, include, but are not limited to: $938,415,000 in United States Currency, representing the estimated proceeds of defendants narcotics distribution organization.

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY