1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2                 EASTERN DIVISION

3

UNITED STATES OF AMERICA,           )
4                                    )
                    Plaintiff,       )
5                                    )    Case No. 09 CR 383-10, -11
-vs-                                 )
6                                    )    Chicago, Illinois
                                     )    January 27, 2015
7    PEDRO FLORES and MARGARITO      )    10:43 a.m.
FLORES,                              )
8                                    )
                    Defendants.      )
9

10                TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE CHIEF JUDGE RUBEN CASTILLO
11
     APPEARANCES:
12
     For the Government:     HON. ZACHARY T. FARDON
13                           UNITED STATES ATTORNEY
                             BY:  MR. MICHAEL JAMES FERRARA
14                           MS. ERIKA L. CSICSILA
                             MR. CHRISTOPHER P. HOTALING
15                           219 S. Dearborn Street
                             Chicago, IL  60604
16                           (312) 353-5300

17   For the Defendant
     Pedro Flores:
18

19

20

21   Court Reporter:

22              KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                     Official Court Reporter
23               United States District Court
             219 South Dearborn Street, Suite 2524-A
24                  Chicago, Illinois  60604
                 Telephone:  (312) 435-5569
25           Kathleen_Fennell@ilnd.uscourts.gov

1    APPEARANCES:   (Continued)

2    For the Defendant
     Margarito Flores:

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings heard in open court:)

2        THE CLERK:  09 CR 383, United States versus Pedro

3    Flores and Margarito Flores.

4        THE COURT:  So appearances have already been noted on

10:43:24  5    the record.

6        Are both sides ready to proceed to sentencing?

7        MR. FERRARA:  Yes, Your Honor.

8        ▮▮▮▮▮▮▮:  Yes, Your Honor.

9        ▮▮▮▮▮▮▮:  Yes, Judge.

10:43:32  10        THE COURT:  And have defense attorneys reviewed the

11    presentence reports?

12        ▮▮▮▮▮▮▮:  Your Honor --

13        ▮▮▮▮▮▮▮:  Yes, Judge.

14        ▮▮▮▮▮▮▮:  -- I've discussed it telephonically with

10:43:43  15    my client and met with him in person recently and reviewed it

16    with him.

17        ▮▮▮▮▮▮▮:  I did not meet in person, but we've

18    discussed it by phone on several occasions, and he has had it

19    in his possession for quite some time, and we --

10:43:58  20        THE COURT:  Okay.  It's my understanding --

21        ▮▮▮▮▮▮▮:  -- have nothing, no comment.

22        THE COURT:  -- that for the defense and for the

23    government, there are no factual objections to the presentence

24    report and no legal objections.  What remains for the Court is

10:44:14  25    really to consider all the 3553 factors, given the plea

1    agreements here, and determine a sentence somewhere between

2    the statutory minimum of 10 years and the cap that has been

3    placed by the plea agreement of 16 years and, in considering

4    that, to determine the level of cooperation made by both of

10:44:44    5    these defendants as outlined in the government's submission,

6    the defendants' original submission, supplemental submissions,

7    also to consider the defendants' own words to the Court by way

8    of letters, as well as the letters I've received from the

9    defendants' spouses; is that correct?

10:45:09    10    ██████████:  Absolutely, Judge.

11    THE COURT:  Okay.  Is there something you want to add

12    to it by way of a proffer as to other potential evidence the

13    Court should consider?

14    ██████████:  Judge, the only thing we would add,

10:45:24    15    there are three people at counsel table that we -- some by

16    subpoena and others by request:  Tom Shakeshaft, the Assistant

17    U.S. Attorney who was in charge of the investigation from the

18    beginning; Agent Eric Durante, I believe he's now stationed

19    somewhere else; and Agent Todd Smith.  All three, if called to

10:45:47    20    testify, would concur 100 percent with the government's

21    factual presentation with respect to the extent of their

22    cooperation.

23    They would all agree that, in their professional

24    opinion, the cooperation was unparalleled, which is what the

10:46:09    25    government has described it as.  They would also expound on

1    the level of the cooperation.  It's essentially laid out in

2    the three exhibits which the government has attached to their

3    pleading and which we referenced in ours, and they could fill

4    in any details you'd like.

10:46:34    5        They all three are extensively briefed on the issue

6    of how difficult this was, how difficult it became, and they

7    would also concur with the government's conclusions with

8    respect to the terrible danger that will follow these

9    individuals no matter where they are.

10:47:00    10        THE COURT:  Okay.  And --

11                    ████████:  Could I have one second to speak to my

12    client?

13        THE COURT:  Sure.

14                    ████████:  Your Honor, I would only comment further

10:47:10    15    that as the Court is well aware, the ongoing nature of this

16    process is such that these gentlemen will be forever called

17    upon, at least for probably a great number of years, to

18    continue to appear when necessary and provide live testimony

19    in the matters that they've already provided information on.

10:47:31    20        Beyond that, I would also ask the Court to consider,

21    as I know you have from reading the various documents you've

22    been given, the dangerousness with which everyone involved

23    with the case was presented with, starting with the

24    clandestine meetings that took place in faraway places to

10:47:51    25    bring this cooperation to full fruition, which it now stands

1  at today.

2        THE COURT:  Okay.  And I take it the government

3  agrees with that.

4        MR. FERRARA:  Correct, Your Honor.

10:48:03
5        THE COURT:  Okay.  Then what we will do, since

6  there's no dispute as to the sentencing guidelines, review of

7  the plea agreement, no factual disputes that the Court needs

8  to resolve, I will accept the facts contained in the two

9  excellent presentence reports.

10:48:22
10        I will certainly consider the defendants' letters to

11  the Court, as well as the letters of their spouses, and we

12  will proceed to sentencing allocution.

13        I'll hear first from the government as to what it

14  believes is an appropriate sentence for both Flores

10:48:41
15  defendants, and then I'll hear from defense attorneys.  And

16  then if either defendant or both defendants wants to make a

17  statement, they're free to do that, or they're free to stand

18  on their letters to the Court.

19        So we'll hear first from the government.

10:48:58
20        MR. FERRARA:  Thank you, Your Honor.

21        As this matter has been pending before Your Honor for

22  the last six years and the relevant sentencing issues have

23  been well briefed by both sides, there's actually not a great

24  deal left to say; however, there are a small number of points

10:49:11
25  that the government would like to highlight that are

1    particularly relevant to the analysis of the 3553(a) factors.

2              The first is recognizing the meaning that this

3    sentence will have on the government's ability to encourage

4    high-level cooperators in the future.  What the Flores

10:49:25    5    brothers accomplished is unprecedented to the point they will

6    unlikely be duplicated in full; however, their sentence

7    presents sort of an unmatched opportunity to send the

8    appropriate message that aiding justice is a viable

9    alternative to defendants persisting in a criminal enterprise.

10:49:44    10             In advancing this message, the Flores brothers'

11   cooperation is a sterling example in two regards:  First is

12   the timing of their cooperation.  Cooperation with the

13   government is not at all uncommon, as Your Honor is well

14   aware, for defendants who are in custody, who have already

10:50:00    15   been charged with an offense.  A meaningful number of

16   defendants who see the handwriting on the wall that the end is

17   near also decide to cooperate before they're charged, before

18   they're in custody.

19             However, where those cooperation numbers become

10:50:17    20   vanishingly small is for people who make the decision to

21   cooperate who are sort of at the height of their criminal --

22   criminal wrongdoing, and that was certainly the case with the

23   Flores brothers.

24             At the time of their outreach to the government, they

10:50:29    25   were absolutely at the top of the cartel world.  They were

1  earning millions of dollars, and they were relatively shielded

2  from problems with law enforcement due to their circumstances.

3  The fact that they were at such an apex when they decided to

4  turn the corner and come in and assist with the government's

5  investigation is exactly why they were able to achieve the

6  results of their cooperation.  The cartel simply did not

7  expect them of being anything other than the cash cow outlet

8  that they had been for years and years.

9       For this reason and this reason alone, the Flores

10  brothers were able to achieve these results that otherwise

11  would have been impossible, and the best example to highlight

12  that, the nature of that cooperation, Your Honor, is the

13  recorded conversations that they made with Chapo Guzman.

14       At the time Chapo was -- was one of the if not the

15  most wanted person on earth.  He was insulated by layer upon

16  layer of buffers and security measures, accessible in person

17  only at compounds that were -- you had to get in a small

18  airplane and fly to a clandestine airstrip cut into the side

19  of a mountain.

20       The Flores brothers were able to bypass all of that,

21  cut through all those levels of security and the buffers to

22  record two conversations directly with Chapo, two remarkably

23  inculpatory conversations in which Chapo admitted to the

24  existence of a vast conspiracy and specifically talked about a

25  heroin transaction right here in Chicago.

1    Defendants in a position that's not entirely

2    comparable but similar to the Flores brothers who are weighing

3    the equities of whether to do the right thing and come in or

4    persist in their criminality can look to this sentence as an

5    example that there is an alternative, that it is a viable

6    alternative to do the right thing, to cooperate with the

7    government and using the Flores brothers' cooperation and

8    ultimate sentence as an example.

9    Your Honor, the second factor that's very closely

10   related is the grave risk of their cooperation.  I know this

11   has been briefed in substantial detail, but it really is

12   impossible to overstate.

13   If the Flores brothers' cooperation was discovered at

14   any time by any number of people within this conspiracy, they

15   certainly would have been killed.  Their family members could

16   have been killed; and as the Court is aware, their father

17   actually was kidnapped and presumed killed as a direct result

18   of this cooperation, the Flores brothers' cooperation.

19   All too often, these type of fears of retaliation

20   from powerful criminal entities prevent people from doing the

21   right thing; and, once more, the fact that the Flores brothers

22   were able to cut through that fear, to work for a substantial

23   period of time with facing that grave danger while they were

24   on their own before they turned themselves in to the

25   government is once more something that's remarkable and

1       something that should be encouraged through an appropriate
2       sentence here.

3               Your Honor, shifting gears for a second, despite the
4       Court's great knowledge of the facts of this case and the
5       briefs that have been made, the government would be remiss if
6       it did not reference the great criminal culpability related to
7       these defendants.  Their operation was simply the largest
8       known enterprise in the history of this city, a city that is
9       unfortunately no stranger to drug trafficking.

10              The total quantity of drugs that the Flores brothers
11      trafficked to Chicago is so large that it sounds fantastic.
12      Even using the most conservative numbers, it was a minimum of
13      more than 60 tons of cocaine alone.  That number sounds
14      unreal, but unfortunately it was all too real, as was the
15      damage that those drugs did to untold individuals and entire
16      communities.

17              And even after the Flores brothers did turn that
18      corner, their cooperation was -- was not perfect.  As the
19      Court is aware, there were two substantial deviations from
20      that correct path, and those were the unreported distribution
21      of 276 kilos of cocaine here in Chicago, as well as the
22      collection of millions of dollars of drug proceeds that were
23      collected during the pendency of their cooperation, once more,
24      without notice to the government on the front end.

25              The Flores brothers were ultimately honest about both

1    of those events in the government's determination; however,

2    the significant factor is that they were not disclosed as they

3    were ongoing or before they happened.

4            Fortunately, for the Flores brothers and the

5    government for that matter, these negatives do not tell the

6    whole story.  Rather, the full story here presents a balance

7    between extreme opposite forces of positive and negative.  In

8    weighing that balance, the government has reached a sentencing

9    recommendation.

10           Your Honor, simply a massive criminal enterprise used

11   to exist here in Chicago, the largest known drug-trafficking

12   enterprise existed here in Chicago at their creation.  That

13   enterprise no longer exists, and they are directly responsible

14   for that.

15           Make no mistake, they were responsible for creating

16   it in the first place, but through their cooperation, that --

17   that enterprise has been completely dismantled, and that was

18   all of the workers and crew members that were here and in

19   other cities, as well as the Flores brothers' customer base

20   that was here and several other cities throughout the country.

21           The fact that that entire operation was entirely

22   dismantled made a real difference.  It made a real difference

23   here in Chicago for the safety of our communities.  It made a

24   real difference in other cities as well, such as Columbus,

25   Cincinnati, Philadelphia, New York, Washington, D.C.

1    Stripping away customers that received from the Flores

2    brothers 50 to 100 kilos of cocaine per month on average, once

3    more, made a real difference.

4            As the Court is aware, their cooperation didn't

5    simply stop there with dismantling their own organization and

6    their customers.  What the Flores brothers did to attack the

7    Sinaloa cartel and the Beltran-Leyva organization really was

8    unprecedented.  These were at the time two of the most

9    dangerous criminal entities on earth.  The work that the

10   Flores brothers did made a massive difference there, and that

11   work continues to make a difference up to and including the

12   present.

13           With the indictment that has been unsealed as of

14   today, Your Honor, the government's investigation has

15   continued from the inception of their cooperation in 2008 all

16   the way until 2015, with additional high-level leadership

17   defendants within the Sinaloa cartel being charged.

18           All of that flows back to their original cooperation,

19   and all of it is relevant to determination of what the

20   appropriate sentence is here.  Your Honor, as recently as

21   yesterday afternoon, the government spent hours with the

22   Flores brothers furthering their cooperation on additional

23   matters to assist with the government's investigation.

24           So, Your Honor, in this case, there's adjectives that

25   are routinely thrown around that you don't hear much in

1    courtrooms, words like unprecedented, extraordinary, historic,

2    incomprehensible, but here those words in this case are used

3    frequently, and they're used frequently for good reason.

4    Simply put, these two defendants are the most valuable

5    cooperators this district has ever seen in the context of a

6    drug case, and as well, Your Honor, in the context of

7    international money laundering related to drug-trafficking

8    organizations.

9           Just using some of these adjectives their cooperation

10   was extraordinary and did enough good to advance the interests

11   of -- I apologize, Your Honor -- to advance the interests of

12   justice that the government believes and recommends that the

13   appropriate sentence here is a sentence at or near the low end

14   of the agreed guideline range of 10 to 16 years' imprisonment.

15          THE COURT:  Thank you.

16          The defense may proceed.

17          ▮▮▮▮▮▮▮▮:  Judge, I said at the very beginning of

18   our sentencing memorandum, which was relatively brief, that to

19   say as the government does at the outset that the Flores

20   brothers' "unparalleled assistance to the government

21   sufficiently offsets their considerable criminal culpability"

22   puts it bluntly; but I also said yet at the same time, it

23   properly frames the criminal -- the critical issues that are

24   before you today.

25          And in that regard, I continued back to the use of

10:57:59

10:58:14

10:58:36

10:58:56

10:59:15

1    the term "unparalleled."  There's no doubt, and both clients
2    will readily admit, that their drug distribution network is
3    unparalleled.  They make no excuse for it.  There are perhaps
4    some things that mitigate, but frankly it's of the scale that
5    is virtually unmitigatable but for the cooperation.

6            And yet on the flip side, the cooperation is indeed
7    unparalleled.  You know it from what the government has set
8    forth.  You also know it from the cases that you've seen, and
9    it seems to me -- and I'm -- you know, there are cases that
10   need wisdom, and this is one of them.  This is a case that
11   needs your experience and your skill at balancing because it's
12   ultimately a balancing.

13           There are competing interests, I get it, everybody
14   gets it; but the reason I set forth the guideline issues is
15   that I think in this case, it's the best place to look for
16   direction because the guidelines really set forth the very
17   factors that you are to consider in the granting of a 5K1
18   motion in arriving at the appropriate sentence, and I did them
19   in reverse in our pleading, and it's kind of the same order
20   that Mr. Ferrara just went in, so I'm not going to belabor it.

21           But the first is the timeliness of their assistance,
22   which I pointed out to you was remarkable on a number of
23   levels, most importantly the sheer danger that they
24   encountered in the very first meetings that they ended up with
25   in Mexico.  I set that forth in the pleading.  I don't need to

10:59:43

11:00:14

11:00:37

11:01:04

11:01:27

belabor it, but you know as well as I do that if someone had
been caught under those circumstances, the result would have
been death and we wouldn't be here today.

Those meetings turned productive.  It started a
domino that is equally unparalleled in this district and,
frankly, I think in the country.

The other factor going in reverse is the injury
suffered or any danger or risk of injury to the defendant and
his family because of his assistance.  As we pointed out to
you, as Mr. Ferrara just said, they've already lost their
father over this.  They have many family members who live --
who will have to live in constant fear for a long time, for as
long as they live.

The defendants themselves have to live in that fear,
and I don't know how you even put a price tag on that type of
anxiety.  I suppose some people could cruelly say they deserve
it, but I don't know that anyone deserves that.

But be that as it may, it exists.  It's a real
threat, and they will live with that whether they are in a
penitentiary or whether they are outside of a penitentiary,
and I think that's a significant factor.

The other factor is nature and extent of the
assistance, which we've also discussed, as we have the
truthfulness, completeness and reliability of any information
or testimony provided, and I won't belabor that because the

1   government stands by that.

2          But what is significant is the first factor, which is

3   your evaluation of the significance and usefulness of the

4   defendants' assistance, taking into consideration the

5   government's evaluation of the assistance rendered.  And I

6   sometimes like to argue the opposite of this, but in this

7   case, I think there's a lot of merit to that.  I think the

8   Commission was wise in that because ultimately it is really

9   only the government that can provide a more detailed, a more

10  relative value to the cooperation.  We were in that chair at

11  one time, both of us, and we know what you see there.

12         So I think the Commission's statement there is

13  extremely important because the government is essentially

14  saying this should be a sentence of 10, 11, 12 years, and I

15  agree with that.  Frankly, I think a sentence of 10 years

16  would work.

17         The issue in that is that sooner or later, they have

18  to be released and live with the fear that we're talking

19  about.  And from a deterrence standpoint, which I think would

20  be the most significant factor, the difference in a couple of

21  years is I think vastly outweighed by your ability to fashion

22  conditions of supervised release that will offset that.

23         So I agree with the government's recommendation here.

24  I think at or near the low end is what we said in the

25  pleading, and I'll stand by that.

11:05:41

1    I know my client wants to address you briefly, he

2 will do that, but he's addressed you in his letter.  I have

3 not been in this case from the beginning, but I've been in it

4 now for it seems like an eternity, maybe four years, and I've

5 come to know Mr. Flores.  I've come to know his family.  I've

6 come to live with the anxiety that they share, but I've also

7 come to appreciate the sincerity of their statements about

8 their caring for their family members, and that's genuine.

9    And, again, that's not -- it doesn't offer any

11:06:06

10 excuse, nothing excuses the conduct, but, you know, there is

11 such a thing as redemption hopefully, and there is such a

12 thing as finally doing the right thing, and I think that's

13 exactly what they have said to you in their letters, and I

14 think -- I don't think.  I know that that's genuine.

11:06:29

15    So I would ask you to do exactly what the government

16 is asking you to do, as odd as it may seem coming from my

17 voice, but I think it's appropriate.

18    THE COURT:  Okay.  You may proceed, counsel.

19    ███████████:  Your Honor, my only further comments are

11:06:44

20 to highlight the timeliness of the cooperation.  Certainly I

21 agree with everything that's been said about the inability to

22 offset the nature of the conduct.

23    What often happens that results in cooperation starts

24 with the handwriting on the wall being your name under the

11:07:05

25 "-v-" in a court document or that early morning visit to your

1    residence by law enforcement agents.

2         What happened here was the handwriting on the wall

3    was self-composed.  Both brothers decided that there had to be

4    a way to alter the course, and they reached out and began that

5    process, an extremely dangerous process because at the time,

6    they were still sitting in the back yard of the very people

7    that they intended to provide information against without the

8    protection that most cooperators normally have because in many

9    instances, not all, those people are either in custody or in

10   the control of government agents.

11        This is a situation that developed while they were in

12   a foreign place, not able to have that protection, where at

13   any given moment, their cooperation with the government could

14   have been exposed and the results dramatically different than

15   what they are right now, including even the ability to

16   negotiate a place to actually have a conversation in person

17   with government agents.

18        Mr. Guzman, as it's well known, has a network of

19   people who continuously provide information to him on the

20   whereabouts of anyone that he may be doing business with, so

21   the mere presence in a location outside where they would

22   normally be authorized to be would have set off significant

23   alarms, and I think the nature of Mr. Guzman's practice would

24   have been to react first and ask questions later.

25        But nonetheless undeterred by that extreme risk, both

1    defendants engaged in cooperative conduct that allowed the

2    government to amass not only a great quantity of information

3    but great quality of information as established by the number

4    of indictments brought in this district, the indictments

5    brought in other districts, the successful prosecution of

6    almost every one of those cases.  In fact, other than a case

7    that was dismissed in this district for reasons that I think

8    only related to the government's willingness to expose certain

9    information, they weighed that and decided not to pursue that

10   case.

11        But in this district, every one of those cases has

12   resulted in a successful prosecution, which I think speaks

13   volumes of the quality and the quantity of the information

14   that was given.

15        As I commented earlier, as you are well aware, this

16   is a process that's not going to stop in the near future.  The

17   risk remains certainly from the moment they decided at a young

18   age to get involved in drug trafficking, well aware of the

19   risks that that posed outside of whether they cooperated with

20   government at any time or not.  The risk was certainly

21   heightened, given the nature of the information they provided

22   to the government and on both sides, they completely

23   dismantled this entire pipeline, both from the supply side and

24   the distribution side.  So the number of people who obviously

25   are not happy with the result of that cooperation certainly

1    significantly increases the risk factor.

2           Judge, this is a risk that will forever follow them

3    and their families.  There's already been a situation that has

4    had a disastrous result for them, and they're going to forever

5    have to live with that.

6           I'm asking that you consider a sentence at the low

7    end, at the very end of the range in this case, and also as

8    Mr. -- as we've mentioned already, I think that there are

9    other ways to fashion a sentence beyond the prison sentence

10   that gives the Court the necessary control moving forward.

11          THE COURT:  Thank you.

12          Do either defendants, either Pedro or Margarito, want

13   to make a statement to the Court?

14          ███████:  May I have a minute, Judge?

15          THE COURT:  Yes.

16      (Defendant and counsel conferring.)

17          DEFENDANT MARGARITO FLORES:  Good morning.

18          THE COURT:  Good morning.

19          DEFENDANT MARGARITO FLORES:  First of all, I want to

20   thank you to taking the time to read my lengthy letter that

21   was sent to you.

22          THE COURT:  And could you state your name just for

23   the record?

24          DEFENDANT MARGARITO FLORES:  Oh, I'm sorry.

25   Margarito Flores, Jr.

1    THE COURT:  Okay.  You may proceed.

2    DEFENDANT MARGARITO FLORES:  First and foremost, I

3 want to take full responsibility for all my actions -- I'm

4 sorry -- for my bad decisions, for the life of crime that I

11:12:10    5 have lived.  I'm ashamed.  I'm embarrassed.  I'm regretful for

6 being stupid enough to making such bad decisions.  I disgraced

7 myself and my children.  I put my family in harm's way, and I

8 will never forgive myself.

9    I want this Court to know that I recognize how awful

11:12:29    10 my conduct was, and I know there's no excuse for it, but I

11 want to apologize to this Court, to the prosecutors, my

12 country, to the citizens of Chicago, all its citizens, and

13 especially to the people I've harmed because of the drugs I've

14 sold, Your Honor.

11:12:45    15    Thank you.

16    THE COURT:  Thank you.

17    DEFENDANT PEDRO FLORES:  Good morning, Your Honor.

18    THE COURT:  Good morning, Mr. Pedro Flores.

19    You may proceed.

11:13:03    20    DEFENDANT PEDRO FLORES:  First of all, I just want to

21 thank God for seeing me through all that danger and allowing

22 me to be here today.  Your Honor, especially thank my wife and

23 children and family for all their support and being --

24 standing strong by our side through the most difficult times

11:13:26    25 in our life.

1       And I also want to thank the United States government
2   for giving me the opportunity to cooperate and take apart the
3   drug traffic I helped create.  Thank the government, the DEA
4   and you, Your Honor, for allowing me the opportunity to not
5   spend the rest of my life in prison.
6       I am before you today ready to take full
7   responsibility for my life as a drug trafficker, and I know my
8   actions deserve the greatest punishment, and I am grateful
9   that the government has asked you to consider my work as a
10  cooperator.  I know my cooperation did not wipe the slate
11  clean for me and the damage I have caused, and I believe it
12  was my obligation to help take apart the drug distribution
13  network I helped build, and I just want to do the right thing
14  and I'm truly sorry for all my actions.
15      Thank you, Your Honor.
16      THE COURT:  Nothing easy about sentencing either of
17  the Flores brothers.  I've given a lot of thought to this
18  sentencing.
19      I have to start out with the first thing I thought
20  about was whether or not this plea agreement was sufficient,
21  given the amount of drugs involved in this case, which is
22  unprecedented, devastating, horrific.
23      When you think about a drug conspiracy that involves
24  1,500 to 2,000 kilograms of cocaine per month and coming not
25  only to this city, which I love dearly, but also to Columbus,

11:16:02

1  Ohio, Cincinnati, Ohio, Philadelphia, New York, Washington,
2  D.C., Detroit, Vancouver, it is devastating to think about
3  that, and it's devastating to think about when you add that
4  all up, it's 64,000 kilos over the course of the charged
5  conspiracy, and this is not only the drug cocaine but also the
6  drug heroin.

7        When you think about the return to this being over
8  $1 billion, it's money, just money that drives all this.  I
9  look at the two Flores brothers and I think growing in Chicago
11:16:29
10  under different circumstances, both of you gentlemen probably
11  could have accomplished a great deal if you had been law
12  abiding because there's a lot of things you are, but stupid is
13  not one of them.  And you're very smart to get to this point
14  in this drug conspiracy, to be able to ultimately work to a
11:16:54
15  level where any walls that we had, and I'm not naive enough to
16  think that we have walls that protected this city, but if we
17  did, you devastated those walls.  You just knocked them down
18  because this became just a highway of drugs that were coming
19  into this city.

11:17:15
20        Nor am I naive enough to think that this highway was
21  closed down because you were out of business or because people
22  have been arrested both in the United States and in the
23  country of Mexico, another country that I love dearly that has
24  been devastated by drug conspiracies.  Unfortunately, the
11:17:39
25  demand for drug use in this country continues.  There are not

1    enough treatment programs, and there seems to be no absence of

2    individuals who get involved in trafficking in drugs.

3         And I know this because I see them every day.

4    Twenty years on the bench, one of the things that I've

11:18:03   5    complained to the U.S. Attorney's Office is that oftentimes,

6    too often, I've seen low-level drug dealers prosecuted in this

7    court, and I've complained about that early and often.  But

8    that is not the complaint that I have today because there is

9    no doubt in my mind that both of the Flores brothers are the

11:18:30   10   most significant drug dealers that I've ever had to sentence

11   in 20 years on the bench, and that is saying a lot.

12        What do I make of this case?  As it is, your

13   attorneys have served you well.  They have negotiated based on

14   your cooperation.  And I do want to talk about your

11:18:56   15   cooperation.  Never in my 20 years on the bench have I seen a

16   situation where defendants, regardless of the crime that's

17   being prosecuted, stopped in the middle of the crime spree and

18   say I'm going to cooperate.  I haven't seen that, so I have to

19   give that significance.

11:19:17   20        And so any inkling that I had to reject the plea

21   agreement based on this type of cooperation, I will not follow

22   that impulse, but I want you both to know that but for your

23   cooperation, if you had been brought before me in your prison

24   garb, you'd be leaving here today with a life sentence, and I

11:19:43   25   would not hesitate at all to give you a life sentence for this

1    type of drug conspiracy and this devastation of this country

2    and this city with these drugs because it is devastating.  It

3    is just simply horrific.

4         I have decided that the plea agreement gives me

5    enough discretion and such as it is, anywhere between 10 and

6    16 years, that certainly narrows my field of discretion.  I

7    think it is fair because I've never seen anyone just stop in

8    the middle of a conspiracy, as I said before, and decide to

9    cooperate.

10        I wish your cooperation had been perfect.  It is not

11   perfect.  It is valuable, it is timely, and the fact that

12   you've recorded conversations is very significant and might

13   turn out to be even more significant in upcoming trials that

14   may or may not take place in this city or in this country, but

15   I understand what you have done.  You've taken a great deal of

16   risk, and I certainly am going to consider that because in a

17   very real way, even though I'm not going to sentence you to

18   life, you are going to leave here with a life sentence.

19        You and your family members for the rest of your life

20   will always have to look over your shoulder and wonder every

21   time you're outside in a vehicle and you see a motorcycle come

22   up behind you, you're going to be wondering if that is the

23   motorcycle that is going to take your life.

24        Every time you start a car, you're going to be

25   wondering is that car going to start, or is that car going to

1    explode every single time for the rest of your life.

2        And I know what that feeling is because I have put my

3    life on the line in the drug wars, and I could close my eyes

4    right here right now in 2015 and take myself back to 1987, and

5    the sad reality is nothing has really changed.  Drugs are

6    available.  You could walk to the West Side of Chicago and

7    people can purchase kilograms, heroin hits, and it just goes

8    on and on.  And that, to me, is sad.

9        I've considered the violence that you suffered, that

10   your family has suffered.  No one should lose a parent under

11   those circumstances.  But realize this:  That a lot of people

12   in this city have lost family members, sons and daughters,

13   fathers and sons, because of drugs.  You need to realize that.

14       I've also considered very carefully what the

15   government said about your actual use of violence and the fact

16   that they cannot prove that you have either ordered someone to

17   have their life taken or were involved in the actual taking of

18   life, and that is significant for me.  And I will tell you,

19   weighing all of these 3553 factors ultimately -- and I want

20   you to know this -- but for your cooperation, you would have

21   received a life sentence.

22       If your cooperation had been perfect, you would leave

23   here today with 12-year sentences.  That's what I think is

24   fair.  But it's not going to be that way, and I'll tell you

25   why, because there's one thing that really bothers me.

1   There's one thing about your cooperation that just is not

2   forgivable for me, and that is your failure to report to the

3   government the arrival of 276 kilograms of cocaine in that

4   transaction with Mr. Vasquez-Hernandez.

11:23:51   5   Now, you need to know, and you do know, that

6   Mr. Vasquez-Hernandez left here with a 22-year sentence just

7   for that transaction, if nothing else.

8   So today, I'm sentencing you, both of you, to

9   14 years in the custody of the Attorney General.  That's what

11:24:12   10   I think is sufficient, that's what I think is fair, but I want

11   you to know that that 276 kilos which you allowed to be

12   distributed on the streets of Chicago cost you two years.  I

13   want you to know that.

14   Now, I'm not concerned about you being involved in

11:24:29   15   drug trafficking after you get out of prison.  I am concerned

16   about your safety.  I am concerned about that, but I think for

17   now, given the time you've already spent in custody, that

18   you're better off being in custody where the government, the

19   government has responsibility for your safety before they turn

11:24:51   20   it over to you.  And I think 14 years, in light of the

21   devastation that you caused this city, this country of yours,

22   is what is appropriate.

23   I will place you on five years of supervised release

24   following the sentence.

11:25:09   25   I'm not going to fine you, although I will tell you

1  this, I think everyone in this city, everyone in this city

2  thinks that you have money.  Everyone.  But we're not going to

3  do anything about that.

4      I will enter the preliminary order of forfeiture

5  which will result in 81,500 seized from Individual A on

6  September 1, 2010 being forfeited, which will result in

7  forfeiture of $10,000 used as a downpayment on a vacant lot

8  being forfeited; more importantly, in $3.5 million, more

9  specifically specified in the preliminary order of forfeiture

10  being forfeited; and also a 2008 Land Rover vehicle which VIN

11  number is indicated in the preliminary order of forfeiture.

12  That will be forfeited.

13      But I think if you ask the average person on the

14  street, they think you still have money left over other than

15  the money that the government is going to leave you with, but

16  I'm not going to fine you.

17      I am required to assess you $100.

18      We're not going to talk about where you're going to

19  be held on the record for safety reasons.  I'll make those

20  recommendations confidentially and privately.

21      But let the message go out:  No. 1, it's never too

22  late to cooperate because a significant discount in what would

23  otherwise have been life sentences has been given by this

24  Court today.  Let that message go out.  You can cooperate with

25  the government and get a discount for bad behavior even as

1   devastating as this behavior was.

2          That will be the sentence of this Court.

3          Is there anything else we need to take care of?

4          MR. FERRARA:  Your Honor, two matters from the

5   government.

6          THE COURT:  Yes.

7          MR. FERRARA:  With respect to the 3553(a) -- I'm

8   sorry, with respect to the conditions of supervised release --

9          THE COURT:  Right.

10         MR. FERRARA:  -- the Seventh Circuit's recent opinion

11  in *United States versus Thompson* requires --

12         THE COURT:  Sure.

13         MR. FERRARA:  -- specific reasons for those

14  conditions, so the government would request that those -- the

15  Court's well-reasoned imposition of those be on the record.

16         THE COURT:  Sure.  And let me just say there will be

17  no special conditions of supervised release.

18         While on supervised release, each defendant cannot

19  commit any federal, state or local crime.

20         And the only other special condition, just because I

21  am aware that there has been some drug use, is that there will

22  be one drug test within 15 days of release from imprisonment

23  and random drug tests thereafter.

24         And it's not lost on me -- I want to tell both of the

25  Flores brothers -- that even one of your brothers was addicted

1    at one point and suffered from addiction, and that's just one

2    example of the many addictions I've had to cope with as a

3    federal judge.

4          I'm also going to order that each defendant provide a

5    DNA sample at the direction of the probation officer.

6          It will also be a condition, given the offenses that

7    the defendants have pled guilty to, and this is federal law so

8    it really doesn't go beyond federal law, that they cannot

9    possess a firearm or destructive device.

10         Those are the sole conditions.  Both Flores

11   defendants have a right to appeal the sentence by filing a

12   notice of appeal within 14 days.  If you need appointed

13   counsel for purposes of pursuing an appeal, you can request

14   one from the Court of Appeals.  But I believe, given your

15   unique cooperation as I've indicated today and the facts of

16   this case, that these sentences are sufficient but no greater

17   than necessary under 18 U.S.C. 3553.

18         Is there anything else?

19         MR. FERRARA:  Your Honor, with respect to the plea

20   agreements in this matter, there is a full appellate and

21   collateral attack waiver.

22         THE COURT:  Okay.

23         MR. FERRARA:  Just to make that of record.

24         And then at this time, the government moves to

25   dismiss Count 2 of the indictment.

1    THE COURT:  Count 2 will be dismissed, and I think we

2  covered all the collateral waivers during the Rule 11 colloquy

3  with both defendants, so I won't go any further with that.

4    Anything else for the defense?

11:30:11  5    ██████████:  No, Judge.

6    ██████████:  No, Your Honor.

7    ██████████:  Can we have a brief --

8    THE COURT:  Sure.  We'll give you a brief moment, and

9  the Court will stand in recess.

11:30:19  10    ██████████:  Thank you.

11    (Which were all the proceedings heard.)

12    CERTIFICATE

13    I certify that the foregoing is a correct transcript from

14  the record of proceedings in the above-entitled matter.

15  /s/Kathleen M. Fennell          February 11, 2015

16  _____        _____

17  Kathleen M. Fennell                  Date
   Official Court Reporter

18

19

20

21

22

23

24

25